UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

THERESA SINGLETON, et al.,

       Plaintiffs,

   v.

FIRST STUDENT MANAGEMENT LLC,
et al.,

       Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 13-1744
(JEI/JS)

**OPINION**

**APPEARANCES:**

CRONIN & MUSTO
By:  Patrick T. Cronin, Esq.
9 Tanner Street
Suite 202
Haddonfield, New Jersey 08033

BERKOWITZ & ASSOCIATES, PC
By:   Steven A. Berkowitz, Esq.
10000 Lincoln Drive East
Suite 202
Marlton, New Jersey 08053
    Counsel for Plaintiffs

LITTLER MENDELSON, P.C.
By:  Michael T. Grosso, Esq.
    Alison Andolena, Esq.
    Amber M. Spataro, Esq.
One Newark Center
8th Floor
Newark, New Jersey 07102
    Counsel for Defendants

**Irenas**, Senior District Judge:

This is a collective and class action case arising under Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19, and the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a.[1]  The Plaintiffs assert that Defendants failed to adequately pay Plaintiffs a portion of their wages starting in early 2011. (Compl. ¶ 215)

Presently before the Court is the parties' joint motion for provisional certification of the settlement class, and preliminary approval of the collective and class action settlement agreement.  For the reasons stated below, provisional certification and preliminary approval will be granted.

## I. Factual Background

First Student Management LLC and First Student, Inc. (collectively, "First Student" or "Defendants"), provide bus service to various schools in the Southern New Jersey area and offer charter services throughout the region.  Defendants employ bus drivers and aides, who are responsible for transporting students to local municipal schools and extracurricular activities.  The Plaintiffs in this matter are comprised of

---

[1] The Court exercises federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The Court also exercises supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

drivers and aides from Lawnside, Berlin, Delran, Cologne, Chatham and Burlington yards in New Jersey.  (Compl. ¶ 214)

Beginning in March 2011, Plaintiffs contend that Defendants failed to pay straight time and overtime wages.[2]  (Compl. ¶ 224) Specifically, Plaintiffs assert that various tasks, such as pre-trip inspections, occurring before the initiation of the Zonar system,[3] were not properly compensated.  (Compl. ¶ 247-62) Similarly, upon returning from their bus route and disengaging the Zonar system, Plaintiffs allege they were not compensated properly for post-trip inspections and other post-trip tasks. (Id.)

Plaintiffs filed their original complaint in this Court on March 21, 2013.  (Dkt. No. 1)  In the following months, additional individuals filed Consent to Join Forms, and an Amended Complaint was filed on July 18, 2013.  (Dkt. No. 38)

## II. Proposed Settlement Agreement

Following extensive negotiations, the parties come before the Court with a proposed settlement agreement for preliminary approval.  The proposed settlement agreement is the product of

---

[2] Straight time involves wages earned for hours worked up to 40 hours per week.  Overtime wages are those earned in excess of 40 hours per week.

[3] The Zonar system conducts pre-trip inspections and tracks bus movements via the Global Positioning Satellite ("GPS") network.

three full days of in-person mediation with Hon. Joel B. Rosen, U.S.M.J. (Ret.), between February and April 2014. (Br. in Supp. at 2-3)  According to the parties, the settlement is a result of substantial discovery on both sides, and the product of several months of adversarial negotiations. (Id.)

The proposed settlement agreement provides that First Student will pay a maximum of $1.6 million to settle this action. (Id.)  Half of the amount will be considered unpaid wages, and the other half considered damages. (Id.)  The settlement will be administered as a common fund paid through a third-party settlement claims administrator, and the administrator will calculate individual settlement awards subject to a proposed formula described infra. (Id.)  As the parties confirmed at the joint motion hearing, the costs of the administrator, as well as the mediation sessions with Judge Rosen, will be borne by the Defendants and will not be subtracted from the maximum settlement amount. (Id.)

The parties estimate that approximately 1,455 drivers and aides at the six facilities identified will be eligible for settlement awards as part of the NJWHL action and FLSA collective action class. (Id.)  These class members will receive notice of the suit and settlement via registered mail. (Id.)  Each class member who returns a claim form and does not opt-out of the settlement will receive payment based on the

4

formula explained below.[4]   (Br. in Supp.4)   These proposed forms are included as Exhibit C in the parties' joint motion for settlement approval.

Plaintiffs' counsel seeks a fee award of $462,000,[5] covering all legal fees and expenses, which the Defendants do not oppose. (Br. in Supp. at 4)   The legal fees and costs will be subtracted from the $1.6 million settlement fund before calculation of individual settlement awards.   (Id.)   As Plaintiffs' counsel confirmed at the motion hearing, no additional funds will be taken out of the settlement fund for any subsequent legal fees or costs.

To calculate an individual Plaintiff's settlement award, the claim administrator will use a formula that begins with the maximum settlement amount ($1.6 million).   (Id.)   The administrator will subtract the Plaintiffs' attorneys' fees and costs ($462,000), and then subtract the Defendants' estimated portion of taxes on the wage half of the settlement.   (Id.)   The

---

[4] A member of the Rule 23 Settlement Class may opt-out by mailing a written, signed request for exclusion to the Claims Administrator expressing his or her desire to be excluded from the Rule 23 Settlement Class.   (Ex. A)

[5] The Court notes that at the motion hearing the Parties stated the amount for legal fees was $468,000.   The Parties brief and the settlement agreement consistently use $462,000 as the amount allocated for attorneys' fees and costs.   For the purposes of the preliminary approval, the Court uses the $462,000 figure from the Parties' filing.   If the Parties believe this is an error, they should file another motion with the Court.

new estimated revised maximum gross settlement amount will then be divided by the total workdays worked by all members of the class.   The result of this division is an estimated dollar amount to be allocated for each workday.   (Ex. A)   The administrator will then calculate the final award to each class member by multiplying the dollar amount for each workday times the number of workdays that each class member actually worked (indicated on the claim forms that class members submit to the administrator).   (Id.)

## III. Legal Analysis

The Plaintiffs pursue four claims against Defendants. Count 1 seeks recovery under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19, for a failure to pay straight time wages. (Compl. ¶ 239)   Count 2 seeks recovery for overtime wages, also under FLSA.   (Id.)   The Plaintiffs seek this recovery as part of a collective action, pursuant to § 216(b). (Compl. ¶ 240)   Count 3 seeks recovery of straight time wages under the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a, and Count 4 seeks recovery of overtime wages under the NJWHL.   (Compl. ¶ 242)   The Plaintiffs seek class action certification pursuant to Federal Rule of Civil Procedure Rule 23 for Counts 3 & 4.   (Compl. ¶ 243)

6

The parties now seek certification of both the class and FLSA collective action, and request this Court's preliminary approval of their proposed settlement.

## A. Collective Action Certification

Under the FLSA, § 216(b) allows an employee to bring suit against his employer "for and on behalf of himself or themselves and other employees similarly situated." This provision enables a named plaintiff to represent a class of similarly situated employees in a "collective action," similar to class actions governed under Rule 23. Id. Unlike class action suits, any employee wishing to join a FLSA collective action must file a written consent to join in the action and be bound by the collective action judgment. Id.

The typical FLSA certification process occurs in two stages: a preliminary certification at the outset of a case, and a final certification at the close of discovery. Camesi v. Univ. of Pittsburgh Med. Ctr., 724 F.3d 239, 242-43 (3d Cir. 2013); Zavala v. Wal-Mart Stores, Inc., 691 F.3d 527, 535-37 (3d Cir. 2012). Preliminary certification imposes a "fairly lenient standard" to demonstrate that the proposed opt-in plaintiffs are similarly situated. Zavala, 691 F.3d at 536 n.4. On final certification, courts determine whether the plaintiff and opt-in

7

plaintiffs are similarly situated by considering all relevant circumstances, including but not limited to:

> [W]hether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment. Plaintiffs may also be found dissimilar based on the existence of individualized defenses. . . . This list is not exhaustive, and many relevant factors have been identified.  *See* 45C AM. JUR. 2D *Job Discrimination* § 2184 (listing 14 factors to be considered in determining whether proposed collective action plaintiffs are "similarly situated" under the ADEA).

Id. at 536-37.

Here, the parties' briefing focuses only on the certification of a Rule 23 class and fails to address the FLSA collective action standard.  Nonetheless, there is no dispute that the opt-in plaintiffs, bus drivers and aides at the Lawnside, Berlin, Delran, Cologne, Chatham and Burlington yards in New Jersey between March 21, 2011 through December 31, 2013, satisfy the FLSA collective-action standard.  These individuals held similar positions in the same locations, and they advance identical claims concerning their unpaid straight time and overtime wages.  (Compl. ¶ 186)  As a result, the Court will grant preliminary certification of the collective action.[6]

---

[6] Section 216(b) requires FLSA plaintiffs to affirmatively opt-in to a FLSA collective action.  29 U.S.C. § 216(b) ("No employee

8

## B. Class Action Certification

Claims 3 & 4 concern claims for straight time and overtime wages under the NJWHL.  The parties seek Rule 23 certification of a parallel class to their FLSA claims, covering "all individuals employed by First Student at the Lawnside, Burlington, Berlin, Delran, Chatham, or Cologne facilities as a Driver or Aide at any time from March 21, 2011 to December 31, 2013."  (Compl. ¶ 241)

To obtain class action certification, plaintiffs must establish that all four prerequisites of Rule 23(a) and at least one part of Rule 23(b) are met.  See, e.g., Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011); Carrera v. Bayer Corp., 727 F.3d 300, 306 (3d Cir. 2013).  Thus, a plaintiff must first establish numerosity, commonality of questions of law or fact, typicality, and the adequacy of the representative parties.  See FED.R.CIV.P. 23(a).  Next, Rule 23(b)(3) requires a plaintiff to establish "that the questions of law or fact common

---

shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").  As discussed in the preliminary approval hearing, the parties contend that the return of the proposed Claim Form sufficiently opts a Plaintiff into the suit.  In support, the parties point to specific language in the Claim Form that releases Defendants from any future FLSA claims within the March 2011 to December 2013 claims period.  The Court accepts that the return of the Claim Form, with the clear release language described *infra*, satisfies the opt-in requirement.

to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The parties stipulate that the Plaintiffs' proposed class satisfies these requirements.

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." The numerosity requirement of Rule 23(a)(1) does not require joinder to be impossible. "To meet the numerosity requirement, class representatives must demonstrate only that 'common sense' suggests that it would be difficult or inconvenient to join all class members." In re Prudential Ins. Co. of Am. Sales Practices Litig., 962 F. Supp. 450, 510 (D.N.J. 1997)(citing Lerch v. Citizens First Bancorp. Inc., 144 F.R.D. 247, 250 (D.N.J. 1992)).

The parties agree, for the purposes of the settlement agreement, that the class members can be readily and easily ascertained. Certifying a class action would more efficiently adjudicate these similar claims and concentrate these very similar claims in one single forum. The class contains 1,455 members. In light of the significant class size, the Court finds that Rule 23(a)(1) is satisfied.

The commonality requirement under Rule 23(a)(2) requires a showing that "there are questions of law or fact common to the

class." FED.R.CIV.P. 23(a)(2).  In the instant case, the class
consists solely of drivers and aides who have worked or are
currently working at the Defendant's Lawnside, Berlin, Delran,
Cologne, Chatham or Burlington yards.  The policies used by
First Student to calculate hours and wages with respect to each
employee's pre- and post- driving activities are uniform for
every employee.  Thus the commonality requirement is also met.

Typicality requires that "the claims or defenses of the
representative parties [be] typical of the claims or defenses of
the class." FED.R.CIV.P. 23(a)(3).  In the present case,
Plaintiffs have typical claims as all other class members.  They
all allege the exact same type of injury allegedly suffered as a
result of the Defendants' conduct: underpayment for the work
performed before and after the activation and deactivation of
the Zonar system.

Rule 23 also requires that "the representative parties will
fairly and adequately protect the interests of the class."
FED.R.CIV.P. 23(a)(4).  The named Plaintiffs and their counsel
have engaged in extensive discovery and vigorous arms-length
negotiations to this point.  This discovery and adversarial
negotiation demonstrates that the representative parties and
their counsel adequately represent the proposed class.

Finally, Plaintiffs must also demonstrate that the action
is maintainable under Rule 23(b)(3).  Class certification under

11

this provision must satisfy the "twin requirements" of predominance and superiority. <u>Newton v. Merrill Lynch, Pierce, Fenner & Smith, LLC</u>, 259 F.3d 154, 186 (3d Cir. 2001).

Predominance requires that common issues predominate over issues affecting only individual class members. <u>In re Warfarin Sodium Antitrust Litig.</u>, 391 F.3d 516, 528 (3d Cir. 2004). The inquiry therefore "focuses on whether the efficiencies gained in resolving these common issues together are outweighed by the individual issues presented for adjudication." <u>Cannon v. Cherry Hill Toyota, Inc.</u>, 184 F.R.D. 540, 545 (D.N.J. 1999).

Here, the Plaintiffs allege that all class members employed by Defendants were deprived of their wages for time worked before and after Zonar system activation and deactivation. All class members were subject to the same time-keeping policies and were in turn not properly compensated. The Court finds that there are common issues of fact that predominate over the class.

The Court also finds that a class action is the superior method of adjudicating the dispute. When class certification is sought under Rule 23(b)(3), the Court must also find "that a class action is superior to other available methods for fairly and effectively adjudicating the controversy." FED.R.CIV.P. 23(b)(3). The Court must "balance, in terms of fairness and efficiency, the merits of a class action against those of

'alternative available methods' of adjudication." <u>Georgine v.</u> <u>Amchem Prods.</u>, 83 F.3d 610, 632 (3d Cir. 1996).

The Court finds that the class members' lack of financial wherewithal and the modest nature of the claims render a class action superior to alternative methods of adjudication. The Plaintiffs are bus drivers and aides, and lack experience with civil suits. The Plaintiffs' individual claims are for relatively small amounts, not likely to exceed a few thousand dollars each. The small size of the claim makes it highly unlikely that an individual Plaintiff would have the time, resources, or interest to pursue his or her claims individually. Therefore, class action would be the best way to proceed and the Court finds that Plaintiffs satisfy the superiority element and the class is certified under Rule 23.

In light of the satisfaction of Rule 23, the Court will grant provisional certification to the following class: "all individuals employed by First Student at the Lawnside, Burlington, Berlin, Delran, Chatham, or Cologne facilities as a driver or aide at any time from March 21, 2011 to December 31, 2013."

## C. Preliminary Class Action Settlement Approval

The parties also seek Court approval of their class action settlement agreement. The process for approving a preliminary

settlement offer is less formal than final approval; it is not binding and may be conducted informally. Jones v. Commerce Bancorp, Inc., No. 05-5600, 2007 U.S. Dist. LEXIS 52144, at *2 (D.N.J. July 16, 2007). The purpose of having a preliminary stage is to ensure that there are no obvious deficiencies in the settlement that would preclude final approval. Id.

While the issue of final settlement approval is not presently before the Court, it is important to consider the final approval factors during this stage so as to identify any potential issues that could impede the offer's completion. These factors, initially described in Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975), include the following:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Girsh, 521 F.2d at 157. Analysis of each factor weighs in favor of preliminary approval.

First, there is little doubt regarding the factual and legal complexity of this case. The substantial factual

14

questions about time worked, the acquisition of such data from GPS records and the Plaintiffs' counsel's independent investigation demonstrates substantial factual complexity. In sum, this factor weighs in favor of preliminary approval.

At the preliminary review stage, the actual reaction of the proposed class remains unknown. However, Plaintiffs' counsel represent that since informing the opt-in Plaintiffs of the preliminary settlement terms in April, class members have supported the settlement terms. Plaintiffs' counsel also asserted at the motion hearing that they do not expect anyone to object to the settlement.

Turning to the third factor, the parties engaged in three full days of in-person negotiations, numerous telephone conferences, and exchanged large volumes of data. Both sides worked with their own experts to analyze GPS data and other digital records. This substantial discovery up to this point weighs in favor of approval.

The fourth, fifth, and sixth <u>Girsh</u> factors consider the risks of establishing liability, damages, and maintaining the class action through the trial, and may appropriately be analyzed together for purposes of preliminary approval. The parties have highlighted substantial risks to pursuing litigation, including:

15

- The possible difficulty in demonstrating liability for unpaid wages for activities prior to logging into the Zonar GPS system;
- The possible difficulty in demonstrating liability due to the potential legal designation of bus drivers as common carriers under the NJWHL and FLSA;
- The difficulty in establishing exact damages figures for any unpaid working time, which may be complicated by the different amount of time it takes individual Plaintiffs to accomplish individual tasks, or distinguishing any *de minimis* uncompensated time from valid, compensable tasks;
- The inherent risks in maintaining a class exceeding 1,000 individuals through trial concerning off-the-clock wage claims.

In sum, the parties have demonstrated significant uncertainties and risks in continuing this litigation that lean in favor of approving settlement at this time.

The Defendants ability to withstand a greater judgment is unknown. The parties do not provide substantial information concerning this inquiry aside from rightfully indicating that a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (citation omitted); see also In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d 235, 244 (D.N.J. 2000). Though this is an accurate characterization, the parties omit any additional information concerning the Defendants' financial wherewithal. This omission does not strongly weigh against preliminary approval.

The final two <u>Girsh</u> factors concern the range of reasonableness of the proposed settlement in light of both the best possible outcome, and the attendant risks of litigation. This proposed settlement is appropriate in light of the best possible outcome. During the motion hearing, Plaintiffs indicated their estimate of the best possible outcome for the class was between $3.2 and $3.6 million.  When attorney fees are included, the proposed settlement amount is about 40% of the Plaintiffs' estimate.  The settlement of a class action may be appropriate even where the settlement is only a fraction of the ultimate total exposure should the case be decided at trial. <u>See</u> <u>Lenahan v. Sears, Roebuck & Co.</u>, No. 02-0045, 2006 U.S. Dist. LEXIS 60307, at *48 (D.N.J. July 10, 2006) (approving a $15 million settlement when maximum exposure at trial may have been as high as $104 million because of the uncertainty of the final disposition of a trial). The Court finds the settlement amount reasonable in light of the attendant risks of litigation.

The Court has performed a preliminary analysis under the <u>Girsh</u> factors and finds that this analysis weighs in favor of preliminary approval of the parties' settlement agreement.

## D. Preliminary FLSA Settlement Approval

Congress enacted FLSA for the purpose of protecting all covered workers from substandard wages and oppressive working

hours.  Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 739 (1981); See also 29 U.S.C. § 202(a).  Congress designed the FLSA to ensure that each employee covered by the Act would receive "[a] fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay."  Barrentine, 450 U.S. at 739  (internal citations and quotations omitted).  Under § 216(b), an employer who violates § 206 or § 207 is liable to the affected employee or employees for unpaid minimum or overtime compensation, and for an additional equal amount as liquidated damages.  29 U.S.C. § 216(b).  FLSA recognizes that "due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce." Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706-7 (1945).

In light of the purpose behind FLSA, claims brought under the Act may be settled or compromised by either: (1) the Secretary of the Department of Labor supervising payments to employees under § 216(c); or (2) a district court approves the settlement pursuant to 29 U.S.C § 216(b).  In re Chickie's & Pete's Wage & Hour Litig., No. 12-6820, 2014 U.S. Dist. LEXIS

30366, at *6 (E.D.Pa. March 7, 2014)(citing <u>Cuttic v. Crozer-Chester Med. Ctr.</u>, 868 F. Supp. 2d 464, 466 (E.D.Pa. 2012)).

In the latter scenario, the Court must scrutinize the agreement for reasonableness and fairness. <u>See</u> <u>In re Chickie's & Pete's</u>, 2014 U.S. Dist. LEXIS 30366, at *6. Courts within the Third Circuit have adopted the standard set forth in <u>Lynn's Food Stores, Inc. v. U.S.</u>, 679 F.2d 1350 (11th Cir. 1982) and generally proceed in two steps. <u>See</u> <u>e.g.</u> <u>Cuttic</u>, 868 F. Supp. 2d 464 (applying <u>Lynn's Food Stores</u> framework); <u>Morales v. PepsiCo, Inc.</u>, Civ. A. No. 11-6275, 2012 U.S. Dist. LEXIS 35284 (D.N.J. Mar. 14, 2012); <u>Brumley v. Camin Cargo Control, Inc.</u>, Civ. A. No. 08-1798, 2012 U.S. Dist. LEXIS 11702 (D.N.J. Jan 30, 2012); <u>Bredbenner v. Liberty Travel, Inc.</u>, Civ. A. No. 09-905, 2011 U.S. Dist. LEXIS 38663 (D.N.J. April 8, 2011).

First, the court will consider whether the agreement is fair and reasonable to the plaintiff-employees. <u>Lynn's Food Stores</u>, 679 F.2d at 1353. This step involves an analysis under the Girsh factors, identical to Rule 23 class action analysis.[7] The Court will also look to whether the settlement resolves a bona fide dispute and will scrutinize the release of claims

---

[7] While factors for evaluating the fairness of a settlement in an FLSA collective action have not been definitively set out by the Third Circuit, district courts in this Circuit have utilized the <u>Girsh</u> factors established for approving Rule 23 class action settlements. <u>See</u> <u>Brumley</u>, 2012 U.S. Dist. LEXIS 40599, at *14.

provision.  See Brumley, 2012 U.S. Dist. LEXIS 40599, at *17.
Once the settlement is found to be fair and reasonable, the
Court proceeds to the second step to determine whether the
agreement furthers the purpose of the FLSA.  Id.  Finally, the
Court will analyze the reasonableness of attorneys' fees under §
216(b).  Id.

As described *supra*, review of the Girsh factors weighs in
favor of approval.  Thus, the Court concludes the proposed
settlement is reasonable for FLSA approval purposes.

Next, the Court will look to whether the settlement
agreement resolves a bona fide dispute.  A proposed settlement
agreement resolves a bona fide dispute where it "reflect[s] a
reasonable compromise over issues, such as FLSA coverage or
computation of back wages, that are actually in dispute" and is
not a "mere waiver of statutory rights brought about by an
employer's overreaching."  Lynn's Food Stores, 679 F.2d at 1354.

Here, the terms of the settlement agreement deal
specifically with the resolution of a bona fide dispute over
back wages.  The Plaintiffs' claims for wages concern the work
performed by employees before and after Zonar activation and
deactivation, the hours spent conducting pre- and post- trip
inspections, and the reasons justifying the employees' right to
the disputed wages.  The parties have submitted details of the
nature of the disputes resolved by the settlement agreement and

20

have demonstrated that the settlement is specific to the claims made by Plaintiffs.  As the formula described above shows, Plaintiffs will be apportioned their individual share of the settlement in accordance with the number of hours worked during the claims period.  (Br. in Supp. at 4)  Therefore, the Court is assured as to the bona fides of the dispute.

Next, the Court turns to the release of claims provision to ensure its reasonableness.  While workers seeking to recover back pay may be willing to waive unknown claims in order to access wrongfully withheld wages as soon as possible, "a pervasive release in an FLSA settlement [that] confers an uncompensated, unevaluated, and unfair benefit on the employer should be examined closely." Brumley, 2012 U.S. Dist. LEXIS 40599 at *25 (quoting Hogan v. Allstate Beverage Co., Inc., 821 F. Supp. 2d 1274, 1284 (M.D. Ala. 2011)).

In this case, the Claim Form provided to each class member contains a release, which provides, in pertinent part,

> [Class members] hereby forever completely settle, compromise, release and discharge Defendants . . . from any and all past and present matters . . . of any kind whatsoever, that are based upon, related to, or arise out of or reasonably could have arisen out of the facts, acts, transactions, occurrences, events or omissions alleged in the Litigation or by reasons of the negotiations leading to this settlement agreement, even if presently unknown and/or unasserted . . . .

21

(Ex. A at 36-37)   The Court finds this language, while broad, to be appropriate.   The release is written to limit any and all future claims related to the specific litigation, and does not incorporate any FLSA claims or other wage issues the Plaintiffs may allege subsequent to the final approval of a settlement.

The second step of FLSA approval analysis requires the Court to determine whether the agreement furthers or "impermissibly frustrates" the implementation of the FLSA in the workplace.   Brumley, 2012 U.S. Dist. LEXIS 40599 at *13; Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227, 1241 (M.D. Fla 2010).   The Court should approve the compromise only if the compromise is reasonable to the employee and furthers implementation of the FLSA in the workplace.   Brown v. TrueBlue, Inc., 2013 U.S. Dist. LEXIS 137349 at *3 (M.D.Pa. Sept. 24, 2013)(finding settlement agreement frustrated the implementation of the FLSA when it required the plaintiffs to keep the terms of the settlement confidential or risk forfeiting their awards).

The parties proposed settlement agreement does not contain a confidentiality provision.   Additionally, far from frustrating the FLSA, the settlement actually furthers it.   The Claim Form indicates that the defendants have set up methods to address potential wage issues.   The parties represent that going forward, employees will be instructed to accurately report all working time, carefully review time records and paychecks, and

notify Human Resources or their supervisor of any discrepancies.
(Ex. A at 72)   The Defendants have also established a compliance
hotline and appointed compliance officers to follow up on
discrepancies not addressed by Human Resources or Supervisors.
(Id.)

Such a result is consistent with the purpose of the FLSA,
which is meant to protect workers from employment agreements
that may not work out in their best interests but that, because
of lack of bargaining power, they have no choice but to accept.
See 29 U.S.C. § 202 (congressional finding and declaration of
policy); Brooklyn Sav. Bank, 324 U.S. at 796 ("The statue was a
recognition of the fact that due to the unequal bargaining power
as between employer and employee, certain segments of the
population required federal compulsory legislation to prevent
private contracts on their part which endangered national health
and efficiency . . . ."). As a result, the substantive
settlement terms meet with preliminary approval for FLSA
purposes.

Finally, under § 216(b), the Court "shall, in addition to
any judgment awarded to the plaintiff or plaintiffs, allow a
reasonable attorney's fee to be paid by the defendant, and costs
of the action." 29 U.S.C. § 216(b). In FLSA cases, judicial
approval of attorneys' fees is necessary "to assure both that
counsel is compensated adequately and that no conflict of

interest taints the amount the wronged employee recovers under a settlement agreement." <u>Brumley</u>, 2012 U.S. Dist. LEXIS 40599 at *29 (quoting <u>Silva v. Miller</u>, 307 F. App'x 349, 351 (11th Cir. 2009)).

In a FLSA case, both the lodestar formula and the percentage-of-recovery method have been used in evaluating the reasonableness of attorneys' fees. <u>Compare Loughner v. Univ. of Pittsburgh</u>, 260 F.3d 173, 177 (3d Cir. 2011)(using lodestar formula), <u>with</u>, <u>Brumley</u>, 2012 U.S. Dist. LEXIS 40599 at *9 (using percentage-of-recovery method). To determine what is reasonable under the lodestar formula "requires multiplying the number of hours reasonably expended by a reasonable hourly rate." <u>Loughner</u>, 260 F.3d at 177. The percentage-of-recovery method, on the other hand, allows a district court judge to award attorneys' fees as a percentage of the total fund recovered. <u>In re Gen. Motors Corp. Pick-Up Fuel Tank Products Liab. Litig.</u>, 55 F.3d 768, 822 (3d Cir. 1995). Fee awards under this method have ranged from 19 percent to 45 percent of the settlement fund. <u>Id</u>; <u>See also Brumley</u>, 2012 U.S. Dist. LEXIS 40599 at *12 (collecting cases where attorneys' fees around 30 percent of settlement funds were found reasonable).

Plaintiffs request that the Court award attorneys' fees in the amount of $462,000 to be subtracted from the maximum gross settlement amount. The Court does not have enough information

24

to complete the full lodestar analysis at the preliminary approval stage, however, the Court finds that this litigation has been ongoing since at least March 2013, the parties have exchanged extensive amounts of data during discovery, and that data has been analyzed by experts on both sides.[8]  Additionally, the parties met for three full days of in-person negotiations and held multiple teleconferences in an effort to resolve this matter.  Such extensive activities over the course of nearly 18 months weighs in favor of approval.

Moreover, under the percentage-of-recovery method, the amount requested represents less than 29 percent of the total recovery by Plaintiffs — well within the range of 30 percent previously identified as reasonable.  The length of the litigation and volume of discovery and data analysis, combined with the fees being a reasonable percentage of the total recovery, favor a finding that $462,000 in attorneys' fees is reasonable here.  Accordingly, the Court finds attorneys' fees and costs reasonable.

In view of the foregoing, this Court finds preliminary approval of the FLSA settlement agreement appropriate.

---

[8] To engage in complete lodestar analysis for final settlement approval, the parties may need to supplement the information provided at this stage.

## IV. Conclusion

Based on the foregoing, the Court will grant the parties'
certification of both the class and FLSA collective action.  The
Court also grants preliminary approval of their proposed
settlement.  The Final Fairness Hearing shall be held on
Tuesday, October 14, 2014 at 3:00 p.m. in Courtroom 1, Mitchell
H. Cohen Building and U.S. Courthouse, Camden, New Jersey.  An
appropriate Order accompanies this Opinion.


Date: 8/6/14

_____
Joseph E. Irenas, S.U.S.D.J.

26